IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL ZARATE, | No. C 10-04727 CW (PR) |
| Petitioner, | ORDER GRANTING RESPONDENT'S MOTION TO DISMISS |
| v. | (Docket no. 7) |
| GREG LEWIS, Acting Warden, | |
| Respondent. / | |

INTRODUCTION

Petitioner, a state prisoner currently incarcerated at Pelican Bay State Prison (PBSP), filed a habeas corpus petition pursuant to 28 U.S.C. § 2254.  Petitioner does not challenge his conviction, but alleges that PBSP officials confiscated his mail on July 12, 2007 -- based on an untrue allegation that the mail was gang-related -- and falsely referred to him as an active member of a prison gang in a 602 inmate appeal decision.  He claims their actions violated his rights under: (1) the First Amendment; (2) the Due Process Clause of the Fourteenth Amendment; and (3) the California Informational Practices Act (IPA) of 1977.  The Court issued an Order to Show Cause directing Respondent to answer the petition.

Before the Court is Respondent's motion to dismiss the petition (docket no. 7) on the ground that this Court lacks habeas jurisdiction to adjudicate the claims raised.  Respondent also argues that Petitioner's claim relating to the IPA is not cognizable because it is based on state law.  Petitioner has filed an opposition to the motion, and Respondent filed a reply. Thereafter, Petitioner filed an addendum to his opposition.

For the reasons discussed below, the Court hereby GRANTS Respondent's motion to dismiss.

## BACKGROUND

Petitioner is currently serving a sentence of seven years to life in prison, with the possibility of parole. (Pet. at 8.) In his petition, he states that he

> has been eligible for parole since March 1990, has had no fewer than (9) parole consideration hearing, and each time denied parole, in part, on CDCR 128-B chronos and classification hearings, alleging continued involvement with a prison gang and/or activities.

(Id. at 9 (footnote omitted).)

On July 12, 2007, PBSP officials confiscated Petitioner's mail. Petitioner was issued a 128-B chrono stating that "the mail violated prison regulations §§ 3023(a) gang activity, a serious rules violation, referencing confiscated 'drawing containing gang related symbols.'" (Id., Ex. A at 1.) Petitioner claims that the allegations relating to "gang related symbols" on his 128-B chrono were false. (Id.) He also claims that he later discovered that a letter and family photos were also confiscated. (Id. at 10.) Finally, he claims that "no violation report (CDCR 115) was issued and the 128-B chrono was inadequate notification, absent was notification of a letter and family photos." (Id. at 9.)

Petitioner filed a 602 inmate appeal challenging the confiscation of his mail, the creation and placement of false information in his prison file in violation of the IPA, and "failure to follow regulations for the claimed serious rule violation." (Id. at 10.) Petitioner claims that, in response to his appeal at the second level of review, PBSP Correctional Sergeant Beeson "created more false information when in his 602

2

response [he] labeled Petitioner as a member of the Mexican Mafia." (Id., Ex. A at 2.)  Petitioner denies that he is an active member of the Mexican Mafia.  (Id. at 10.)  Instead, he claims that he is merely an associate.  (Opp'n at 3.)  Thus, Petitioner argues that Sergeant Beeson "falsely upgraded Petitioner's gang status from associate to member, a status that connotes authority within a prison gang."  (Id.)

Petitioner claims that he was placed in the Security Housing Unit (SHU) because Sergeant Beeson referred to him as an active gang member.  (Addendum at 2.)  Petitioner argues, "It is false information of the nature raised herein (§ 3023 Gang Activity) that retains him in the SHU which in turn will affect [his] duration of confinement."  (Id.)  Specifically, Petitioner claims that "the 128-B chrono reference to gang activity and Sergeant Beeson's reference of gang membership, both false, will be viewed and relied on in part by the next Board hearing to deny parole and prolong Petitioner's prison sentence."  (Pet. at 10.)

On January 10, 2008, Petitioner appeared before the Board for his parole suitability hearing.  Attached to the petition is a portion of the transcript of the Board's decision.  (Id. at 27-30.) The transcript states that the Board correctly noted that he was a "validated associate of the Mexican Mafia."  (Id. at 29.)  The Board denied Petitioner parole for the following reasons: he lacked viable parole plans; he had a history of alcoholism and lacked a relapse prevention plan; the offense was carried out in a "dispassionate and calculated manner"; he had an "extensive history of criminality"; and he is housed in the SHU for being a validated gang associate.  (Id. at 28-29.)

3

In November, 2011, Petitioner appeared again before the Board for his eleventh parole suitability hearing. (Addendum at 2.) He claims he was "denied a parole date in part because he is in SHU as an active associate of a prison gang." (Id. (footnote omitted).)

Petitioner asks the Court, among other things, to expunge from his prison file the July 12, 2007 CDCR 128-B chrono and to return the confiscated mail, including the "(3) page letter and drawings." (Pet. at 11.)

DISCUSSION

I.   First Amendment and Due Process Violations

Respondent argues that the petition must be dismissed because its claims do not properly invoke federal habeas corpus jurisdiction. Respondent asserts that Petitioner's challenge to the confiscation of his mail and to the documents referring to his gang membership do not establish habeas jurisdiction because a successful challenge will not shorten his confinement. Petitioner counters that the possibility that he may not be paroled -- because of the false documents in his prison file referring to his gang membership -- results in a longer sentence.

"'Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983. Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus.'" Hill v. McDonough, 547 U.S. 573, 579 (2006) (quoting Muhammad v. Close, 540 U.S. 749, 750 (2004)). "An inmate's challenge to the circumstances of his confinement, however, may be brought under § 1983." Id.

4

The two remedies are not always mutually exclusive. Docken v. Chase, 393 F.3d 1024, 1026 (9th Cir. 2004). For example, "when prison inmates seek only equitable relief in challenging aspects of their parole review that, so long as they prevail, could potentially affect the duration of their confinement, such relief is available under the federal habeas statute." Id. at 1028. The Supreme Court has declined to address whether a challenge to a condition of confinement may be brought in a habeas petition. See Bell v. Wolfish, 441 U.S. 520, 526 n.6 (1979); Fierro v. Gomez, 77 F.3d 301, 304 n.2 (9th Cir.), vacated on other grounds, 519 U.S. 918 (1996). However, the Ninth Circuit has held that "habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence." Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003).

A. First Amendment Claim

Petitioner has failed to show how the confiscation of his mail affects the fact or duration of his custody. Thus, it is properly brought under § 1983, rather than in a habeas petition. Id.

While a district court may construe a habeas petition by a prisoner attacking the conditions of his confinement as pleading civil rights claims under 42 U.S.C. § 1983, it is not appropriate to do so in this case. See Wilwording v. Swenson, 404 U.S. 249, 251 (1971), superceded by statute on other grounds as recognized in Woodford v. Ngo, 548 U.S. 81, 84 (2006). As explained below, the habeas petition does not include the information necessary to state a civil rights violation.

Respondent's motion to dismiss Petitioner's First Amendment

5

claim is GRANTED without prejudice to bringing this claim in a civil rights action.

B. Due Process Claim

Respondent has established that a successful challenge to the documents referring to Petitioner's gang membership would not affect the length of his incarceration. Petitioner is serving an indeterminate life sentence; therefore, success on this claim would not result in the shortening of his life sentence. Petitioner argues that there is a possibility that the documents may affect the length of his incarceration because he could be denied parole based on his alleged gang membership. This is insufficient to establish a basis for habeas jurisdiction.

Under the law of the circuit, habeas jurisdiction may exist where "a petitioner seeks expungement of a disciplinary finding from his record" and "expungement is likely to accelerate the prisoner's eligibility for parole." Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989). However, in Wilson v. Terhune, the Ninth Circuit clarified that a prisoner seeking to challenge prison disciplinary proceedings in a habeas petition must demonstrate that continuing collateral consequences exist. 319 F.3d 477, 478, 482 (9th Cir. 2003). Allegations that a rules violation finding may result in a delay or denial of parole involve discretionary decisions too speculative to constitute sufficient proof of such collateral consequences. Id. at 481-82.

Petitioner compares his case to Bostic. He acknowledges that he is not challenging a disciplinary finding, but is challenging "false documentation created and placed in his file, resulting from 1st and 14th Amendment violation." (Opp'n at 5.) However, he

6

argues, "Like Bostic he seeks expungement that could likely accelerate parole release."  (Id.)  While Petitioner claims he is also seeking "expungement," he is not seeking expungement of a disciplinary finding, like Bostic.  Instead, Petitioner seeks the expungement of the CDCR 128-B chrono and challenges another document referring to his gang membership.  The rationale of Bostic does not allow Petitioner to seek this relief under the federal habeas statute.  He cannot show that a correction of Sergeant Beeson's use of the term gang membership would accelerate his release from custody, given that at his 2008 and 2011 parole suitability hearings, the Board correctly labeled him a gang associate and included multiple grounds for his parole denial.[1]  Petitioner's allegations that the documents referring to his gang membership may result in a delay or denial of parole involve discretionary decisions too speculative to constitute sufficient proof of collateral consequences.  See Wilson, 319 F.3d at 481-82.  Therefore, Respondent's motion to dismiss Petitioner's due process claim is GRANTED for lack of habeas corpus jurisdiction.

Unlike his mail confiscation claim, Petitioner's due process claim would not be properly brought under § 1983.  The deprivation of a prisoner's purportedly constitutionally protected liberty interest must comport with procedural due process only if the deprivation constitutes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).  Here, Petitioner

---

[1] While Petitioner has attached the transcript from the 2008 parole suitability hearing, he did not do so for the 2011 hearing. The Court assumes that there were other reasons he was denied parole in 2011 as it was only "in part" because he is housed in the SHU for being a validated gang associate.  (Addendum at 2.)

7

challenges documents referring to his gang membership.  Petitioner has no such liberty interest in the precise accuracy of his prison files.  Therefore, even liberally construed, Petitioner's claim does not state a cognizable claim under § 1983 for denial of due process.  Accordingly, Petitioner's due process claim is dismissed with prejudice and without leave to raise it in a civil rights action.

II. Violation of Rights Under the IPA

The IPA, California Civil Code §§ 1798, et seq., provides an interest in, and procedures for, obtaining access to personal files held by state agencies.  Under the IPA, "each agency shall permit any individual upon request and proper identification to inspect all the personal information in any record containing personal information and maintained by reference to an identifying particular assigned to the individual . . . ."  Cal. Civ. Code § 1798.34(a).  In addition, each agency shall permit an individual to request amendment of a record and shall "[m]ake each correction in accordance with the individual's request of any portion of a record which the individual believes is not accurate, relevant, timely, or complete and inform the individual of the corrections made in accordance with their request;" or "[i]nform the individual of its refusal to amend the record in accordance with such individual's request."  Cal. Civ. Code § 1798.35(a), (b).  An individual may bring a civil action against an agency whenever such agency refuses to comply with an individual's lawful request to inspect or maintain accurate records.  Cal. Civ. Code § 1798.45.

Petitioner seeks a remedy for PBSP officials' alleged violation of the IPA by making a false reference to his gang

8

affiliation.  Petitioner alleges that he has been erroneously denied a remedy that is available to him under the IPA.  The IPA provides a post-deprivation cause of action in state court to correct such errors.  Such a claim is not cognizable in a federal habeas corpus petition, however, because it alleges a violation of state laws and procedures, and not the violation of a right secured by the United States Constitution or federal law.  A person in custody pursuant to the judgment of a state court can obtain a federal writ of habeas corpus only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  In other words, a writ of habeas corpus is available under § 2254(a) "only on the basis of some transgression of federal law binding on the state courts." Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  It is unavailable for violations of state law or for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Engle, 456 U.S. at 119; Peltier v. Wright, 15 F.3d 860, 861-62 (9th Cir. 1994).

    Accordingly, Petitioner's claim relating to the IPA is DISMISSED as not cognizable in federal habeas corpus.  The Court GRANTS Respondent's motion to dismiss it.  Nor is it cognizable as a civil rights violation under § 1983.  It is not sufficiently related to his First Amendment mail confiscation claim to be brought with it as a matter of supplemental jurisdiction. Petitioner's remedy, if any, lies in state court.

III.  Requirements for Civil Rights Complaint

    As mentioned above, Petitioner's First Amendment claim is

9

dismissed without prejudice to re-filing as a civil rights complaint. It cannot be construed as such in its present form for several reasons.

Petitioner must ensure that he has exhausted all of his administrative remedies. The Prison Litigation Reform Act of 1995 (PLRA) amended 42 U.S.C. § 1997e to provide, "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). All available remedies must now be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Id. (citation omitted). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). The PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies. Woodford, 548 U.S. at 94.

Petitioner must also name as defendants each person who caused a violation of his constitutional rights and explain what each person did to cause the violation. Liability under § 1983 arises only upon a showing of personal participation by the defendant. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). There is no respondeat superior liability under § 1983, i.e., no liability under the theory that a supervisor is responsible for the actions or omissions of his or her subordinate. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988) (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that

10

defendant proximately caused deprivation of federally protected right).

The filing fee for a civil rights action is $350.00. Petitioner must be prepared to pay the filing fee, or file an application for leave to proceed IFP, before his new action can proceed. If Petitioner is unable to pay the full filing fee at the time of filing, he must submit: (1) an affidavit that includes a statement of all assets he possesses, and (2) a certified copy of his trust fund account statement for the six-month period immediately preceding the filing of the action, obtained from the appropriate official of each prison at which he is or was confined. See 28 U.S.C. § 1915(a)(1), (2). If the Court determines that he is unable to pay the full filing fee at the time of filing, he will be granted leave to proceed IFP. This means that the filing fee must be paid by way of an installment plan, according to which the Court first will assess and collect a partial filing fee from him, and then he will be required to make monthly payments of twenty percent of the preceding month's income credited to his account until the full $350.00 filing fee is paid. Id. § 1915(b)(1). The agency having custody of a prisoner is responsible for forwarding to the Court payments from the prisoner's account each time the amount in the account exceeds ten dollars. See id.

## CONCLUSION

For the foregoing reasons,

1. Respondent's motion to dismiss (docket no. 7) is GRANTED, and the petition is DISMISSED for lack of federal habeas corpus jurisdiction and for lack of a cognizable claim. Petitioner's First Amendment claim is dismissed without prejudice to pursuing

11

under 42 U.S.C. § 1983; if he wishes to do so, he must use the Court's civil rights complaint form.  Petitioner's due process claim is DISMISSED with prejudice, and his IPA claim is dismissed without prejudice to pursuing it in state court.

    2.   The Clerk of the Court shall send Petitioner a blank civil rights form and the Court's prisoner IFP application form along with his copy of this Order.

    3.   The Clerk shall also enter judgment, terminate all pending motions, and close the file.

    4.   This Order terminates Docket no. 7.

IT IS SO ORDERED.

Dated:  3/20/2012

CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE